1629 K STREET N.W., SUITE 300
WASHINGTON, D.C. 20006

HAMILTON LINCOLN
LAW INSTITUTE

Adam Schulman
(610) 457-0856
adam.schulman@hlli.org

Jacob Huebert
(312) 637-2280
jhuebert@libertyjusticecenter.org
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, IL 60654

October 31, 2023

**VIA ECF**

Molly Dwyer, Clerk of Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

      Re:   *McDonald v. Lawson*,
            Nos. 22-56220 and 23-55069
            Before: Tashima, Forrest, Circuit Judges, and Cardone,
            District Judge
            <u>Argument submitted July 17, 2023</u>

Dear Ms. Dwyer:

In accordance with the Court's October 17 order, the *McDonald* and *Couris* plaintiffs jointly file this letter brief addressing the question of mootness vis-à-vis California Senate Bill 815. SB 815's forthcoming repeal of the COVID-19 misinformation ban does not moot Plaintiffs' appeals. Section 1, below. And it will not fully moot the cases even after

the effective date of the repeal. Section 3, below. This Court should act expeditiously to afford relief to Plaintiffs and all doctors across the state who continue to suffer harm to their First Amendment rights with each passing day. Section 2, below. The law itself would benefit from a decision—especially since government efforts to suppress dissenting speech in the name of combatting "misinformation" are accelerating at a disturbing rate. Section 4, below.

### 1. The future repeal of the medical misinformation ban cannot moot these appeals now.

Under California law, statutes (such as SB 815) enacted during regular legislative session and without a special declaration of urgency go into effect in January of the following calendar year. *See* CAL. CONST. ART. IV. § 8(c)(1). Until that time, "a statute has no force whatever." *People v. Righthouse*, 72 P.2d 867, 867 (Cal. 1937). "It speaks from the date it takes effect and not before." *Id.* This is equally true of a "repealing clause." *Id.* at 868. Thus, Cal. Bus. & Prof. Code § 2270 remains operative until January 2024.

Black letter law follows: the passage of a statutory amendment can "of course" "not moot" a case "before the effective date" since "enforcement of the [current law] would subject [Plaintiffs] to liability." *Shaw v. Delta Air Lines*, 463 U.S. 85, 93 n.9 (1983); *accord Kirchberg v. Feenstra*, 450 U.S. 455, 459 n.6 (1981) (similar). "[A] legal effect that *has yet to occur* [cannot] moot this case now." *Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021) (emphasis in original), *rev'd on other grounds sub nom. Biden v. Texas*, 142 S. Ct. 2528 (2022).

Nor should this Court hold the appeals to be prudentially moot because of the prospective repeal. To begin, this Court has not adopted a prudential mootness doctrine outside the bankruptcy context. *Maldonado v. Lynch*, 786 F.3d 1155, 1161 n.5 (9th Cir. 2015) (*en banc*). But in any event, such doctrine would not apply here. "In light of a federal's court's 'virtually unflagging' obligation to 'hear and decide cases within its jurisdiction,'" this Court should "decline to dismiss a live

controversy as moot because it could become so in future." *Meland v. Weber*, 2 F.4th 838, 849 n.7 (9th Cir. 2021).

The medical misinformation ban currently inflicts irreparable constitutional harm to Plaintiffs and California's doctors each passing day. *See* Section 2, below. And the proliferation of misinformation bans across the country has become an increasingly pressing free speech concern. *See* Section 4, below. Given the resources that the parties and the Court have expended in considering, briefing, and arguing the merits, this Court should render its decision notwithstanding the California legislature's attempt to evade appellate review. *See Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (refusing to dismiss a case as "anticipatorily moot" because the case provided "an opportunity to decide" an important recurring issue).

## 2. In the meantime, plaintiffs and California doctors continue to suffer an infringement of their First Amendment rights.

Although the Eastern District of California has enjoined enforcement of AB 2098 against the plaintiffs in the *Høeg* and *Huang* actions, the Plaintiffs-Appellants here and all other California doctors who are not members of Physicians for Informed Consent still suffer an ongoing unconstitutional restraint on their speech. This "First Amendment infringement that occurs with each passing day is irreparable." *Neb. Press Assn v. Stuart*, 423 U.S. 1327, 1329 (1975). The "chill … on free speech rights—even if it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). So too even if the chill is only "for minimal periods of time." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

As a result, the *McDonald* and *Couris* District Courts' refusal to grant an injunction against enforcement of AB 2098 means that Plaintiffs continue to suffer irreparable harm through their chilled speech. *See*

CourisER-95-100; McDonaldER-47-58. And Plaintiffs' patients are still suffering a reciprocal harm in being deprived of the independent and candid views of their personal doctors. *Conant v. Walters*, 309 F.3d 629, 643 (9th Cir. 2002) (Kozinski, J., concurring). Defendants themselves agree that if the law is unconstitutional, Plaintiffs sustain irreparable injury from the threat of enforcement. Gov't Answering Br. 3, 58.

Plaintiffs urge the Court to rule expeditiously to remedy this mounting harm.

**3. Even after the effective date of the repeal, an injunction against enforcement would still redress the remaining threat of enforcement based on past speech.**

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. SEIU*, 567 U.S. 298, 307 (2012) (internal quotations omitted); *accord United States v. Sprint Commc'ns., Inc.*, 855 F.3d 985, 990 (9th Cir. 2017). As long as the parties retain a "concrete interest, however small, in the outcome of the litigation, the case is not moot." 567 U.S. at 307-08 (internal quotations omitted). Any iota of relief is sufficient.

Here, the repeal does not "completely and irrevocably eradicate[]" the threat posed by AB 2098. *Wong v. Dept. of State*, 789 F.2d 1380, 1384 (9th Cir. 1986) (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). Although the repeal will relieve any direct chilling effect of speech communicated after its effective date, Plaintiffs still face the threat of liability for speech delivered to patients during 2023 while AB 2098 was in effect. The relief Plaintiffs seek—an injunction against enforcement of AB 2098—would protect Plaintiffs and other doctors for this period before the effective date of the repeal.

This threat remains a "present effect[]" sufficient to prevent mootness. *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003), *overruled in part on other grounds*, *Bd. of Trs. of the Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (*en banc*);

*see also Or. Nat. Desert Ass'n v. United States Forest Serv.*, 957 F.3d 1024, 1032 (9th Cir. 2020) ("carryover effects" prevent mootness). "[A] challenge to a repealed rule or regulation may not be moot if 'the former provisions continue to control the consequences of past actions.'" *Defenders of Wildlife v. Johanns*, 2005 WL 2620564, 2005 U.S. Dist. LEXIS 42273, at * 20 (N.D. Cal. Oct. 14, 2005) (quoting Wright & Miller, 13A Fed. Prac. Proc. Juris.2d § 3533.6 and citing *Jacobus*). In *Jacobus*, plaintiffs challenged provisions of Alaskan campaign finance laws that were then repealed during the litigation. 338 F.3d at 1102. This Court held that the appeal was not moot because the plaintiffs were still "vulnerable to civil and criminal prosecution" for their acts during the time that the laws were in effect. *Id.* at 1104. Like Alaska, California permits enforcement of pre-repeal violations to occur after the repeal of a law, unless the repeal designates itself as retroactive. *Compare id.* at 1104 n.15, *with Myers v. Philip Morris Cos., Inc.,* 50 P.3d 751, 758 (Cal. 2002) (citing Cal. Civ. Code § 3). SB 815 does not designate its effect as retroactive.

Although Defendants have not explicitly reserved their right to prosecute past violations of AB 2098, they already subjected Dr. McDonald to a lengthy investigation for allegedly spreading misinformation about COVID-19 on social media before AB 2098. McDonald-ER49-50. The specter of professional liability under AB 2098 for Plaintiffs' speech during calendar year 2023 suffices to keep the appeals live. *Contrast Qwest Corp. v. City of Surprise,* 434 F.3d 1176, 1182, (9th Cir. 2006) (no live dispute after repeal because the parties agreed that plaintiff was not subject to the earlier ordinance).

Thus, even after the effective date of the repeal, this case will not be moot because the Court can still grant effectual relief.

### 4. Government efforts to restrict "misinformation" present a growing peril to constitutional values.

Plaintiffs do not directly invoke the "capable of repetition, but evading review" exception to mootness. Prudentially, however, the same

concerns apply here. After oral argument in these appeals, an unknown legislator snuck a provision repealing Section 2270 into an omnibus bill involving thirty-odd amendments to the Business and Professions Code, without explanation.[1] "It shouldn't be that easy for the government to

---

[1] Section 19 of SB 815, which simply reads "Section 2270 of the Business and Professions Code is repealed." was first added to the bill while it was pending before the Assembly Appropriations Committee on September 1, 2023. *See* https://tinyurl.com/52xv72dj (Assembly Appropriations Committee video at 3:16:58, recommending "do pass" with amendment from unspecified author). The amendment lists no sponsors, and legislative reports do not say who added it.

In contrast, Assemblymember Berman made minor amendments to SB 814 on September 8 and 11 prior to passage and was identified as the author of both. *See* https://tinyurl.com/2s3b3w2s and https://tinyurl.com/wkfnn7yn.

On the last day of California's legislative session, September 14, the Assembly passed the bill, without discussion of the new section repealing AB 2098. https://tinyurl.com/4swcsz48.

After passing the Assembly floor, the bill returned for the Senate to concur in amendments. The relevant Senate report did not describe the repealer amendment, unless by the words "make various technical and conforming changes to ensure effective implementation." https://tinyurl.com/4ptefnp6 (9/14/23 Senate Floor Analysis). The bill's original sponsor, Senator Roth did not describe the amendment unless by the words "various other conforming changes." https://tinyurl.com/424mjdc9 (Senate Floor Session video at 7:47:34).

Senator Grove asked the sponsor a question: whether SB 815 repeals AB 2098, and if so, why the repeal is "discreetly placed in the bill and why it's needed." Sen. Roth replied "I have no idea… If you want to put this [question] on hold for a while," as he theatrically looked at his watch. (It was past 10 PM on the legislature's last day.) Sen. Grove replied that Republican legislators were right to oppose the unconstitutional AB 2098. Sen. Roth said he had "no idea how to respond that since I couldn't even catch the reference to the bill" but he would be "happy to do it offline." *Id.* Thereafter, SB 815 passed 35-to-1.

avoid accountability by abusing the doctrine of mootness. But judges too often dismiss cases as moot when they're not." *Tucker v. Gaddis*, 40 F.4th 289, 293 (5th Cir. 2022) (Ho, J., concurring).

In briefing, Plaintiffs have touched on the propagation of government efforts to rein in heterodox speech as "misinformation" or "disinformation." Couris Reply Br. 11-12. Other recent examples abound. Missouri prohibits its pharmacists from disputing the state's view of the efficacy of certain politically-controversial medications. *Stock v. Gray*, __F.Supp.3d__, 2023 WL 2601218, 2023 U.S. Dist. LEXIS 48300 (W.D. Mo. Mar. 22, 2023). Puerto Rico criminalizes spreading misinformation during a declared period of emergency. *Rodriguez-Cotto v. Pierluisi-Urrutia*, No.20-cv-1235, __F.Supp.3d__, 2023 U.S. Dist. LEXIS 57310 (D.P.R. Mar. 31, 2023). Most recently, Minnesota prohibits the dissemination of electoral misinformation, which some state officials construe to proscribe expressing the view that certain voting reform laws are unconstitutional. *See Minnesota Voters Alliance v. Ellison*, No. 23-cv-02774-NEB-TNL (D. Minn.) "Despite the obvious First Amendment issues these laws raise, there are only a handful of court decisions at any level that expressly address their constitutionality." David S. Ardia & Evan Ringel, *First Amendment Limits on State Laws Targeting Election Misinformation*, 20 FIRST AMEND. L. REV. 291, 293 (2022).

Commentators across the country have recognized the transparent constitutional dangers of targeting misinformation. Couris Reply Br. 12 (citing authorities); *see also* Herbert Lin, *Should the Government Regulate Polarizing and Misleading Speech on Social Media?*, DIVIDEDWEFALL (May 18, 2022) https://tinyurl.com/565trnx8 ("[g]overnment regulation to prevent the spread of misinformation and disinformation is neither desirable nor feasible"). If the history of scientific advancement hasn't revealed the dangers, the crackdown on COVID "misinformation" has. Bret Swanson, *Covid Censorship Proved to Be Deadly*, THE WALL ST. J. (July 7, 2023) https://tinyurl.com/4mzmcr3v.

And yet governments throughout the country persist in aggressively pursuing misinformation regulations. *See* Rebecca Kern, *Push to rein in social media sweeps the states,* POLITICO (July 1, 2022) https://tinyurl.com/yexx23hb. Even worse, these laws are popular. Christopher St. Aubin & Jacob Liedke, *Most Americans favor restrictions on false information, violent content online*, PEW RESEARCH CTR. (July 20, 2023) https://tinyurl.com/56u7hwrt. Of particular concern, young people—our future civic leaders—are disproportionately likely to not just tolerate government censorship of supposed misinformation, but actively cheer it. Alan Dershowitz, THE CASE AGAINST THE NEW CENSORSHIP (2021), 2.

But federal "[c]ourts must always be vigilant in protecting constitutional rights." *United States v. Olsen*, 21 F.4th 1036, 1065 (9th Cir. 2022). And the "flexible character of the Art. III mootness doctrine encompasses consideration of the public interest in safeguarding fundamental constitutional rights" like freedom of speech. *Armster v. United States Dist. Court for Cent. Dist*., 806 F.2d 1347, 1360 (9th Cir. 1986). Therefore, because governments have shown little recognition of the First Amendment boundaries in their zeal to regulate misinformation, nor any sign of slowing down their encroachments, this Court should not apply any form of prudential mootness. It should instead decide this case with all due alacrity.

Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman
*Counsel for Appellants Michael*
*Couris and Michael Fitzgibbons*
*Hamilton Lincoln Law Institute*

*/s/ Jacob Huebert*
Jacob Huebert
*Counsel for Appellants Mark*
*McDonald and Jeff Barke*
*Liberty Justice Center*

cc:    Counsel via ECF system

## Proof of Service

I hereby certify that on October 31, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

*/s/   Adam E. Schulman*